PER CURIAM:*
Plaintiffs-Appellants appeal the district court’s grant of summary judgment dismissing their tortious interference with a contract claim on the- grounds that the underlying agreements were illegal and void under the Texas Medical Practice Act because they provided for the practice of medicine in Texas without a license. We AFFIRM.
l—i
Plaintiff Xenon Health, L.L.C. (“Xenon”) is a California company that provides anesthesia services to medical facilities and management services to anesthesia providers. Plaintiff Haroon W. Chaudhry, M.D. (“Dr. Chaudhry”), a resident of California, is the president and chief executive officer of Xenon. Xenon sought to expand its services to Texas in early 2011, but Dr. Chau-dhry was not licensed to practice medicine in Texas and could not provide medical services without a Texas license. Xenon’s chief operating officer, Fahim Hashim (“Hashim”), contacted his friend and business associate, Defendant Mirza Baig. Baig introduced Plaintiff Dr. Chaudhry to Dr. Mutjaba Ali Khan (“Dr. Khan”), a physician licensed to practice medicine in Texas. .
Dr. Chaudhry was in the process of seeking a Texas medical license and agreed with Dr. Khan to establish a Texas entity, Xenon Anesthesia of Texas PLCC (“Xenon Texas”), to provide anesthesia services in Texas. Dr. Chaudhry and Dr. Khan entered into three agreements in July 2011: (1)' a Purchase and Sale Agreement (“PSA”), (2) an Equity Interest Assignment Agreement' (“Equity Agreement”), and (3) an Exclusive Management Services Agreement.
Under the Exclusive Management Services Agreement, Dr. Khan acted as managing member of Xenon Texas, but the services were provided by Dr. Chaudhry through Xenon in California. Additionally, under the PSA and the Equity Agreement, within seven business days of Dr. Chau- *272 dhry obtaining his Texas medical license, Dr. Khan agreed to sell his interest in Xenon Texas to Dr. Chaudhry. Until that sale, Xenon would perform services for Xenon Texas for a monthly fee of $750,000. These agreements were all signed contemporaneously in July 2011 and became effective on that date.
Xenon’s chief operating officer, Hashim, left the business in December 2011, believing that he would be terminated. At that point, Plaintiffs Xenon and Dr. Chaudhry filed this suit, alleging that Baig, Hashim, Dr. Khan, and Dr. Khan’s attorney all conspired to take control of Xenon Texas. Plaintiffs alleged that Baig, as the “leader” of the effort, caused the termination of all three agreements before Dr. Chaudhry obtained his Texas medical license on October 1, 2012.
Plaintiffs’ suit alleged that Baig tortuously interfered with the agreements between Xenon/Dr. Chaudhry and Xenon Texas/Dr. Khan. Baig moved for summary judgment. Finding that the three agreements were illegal and void, the district court granted Baig’s motion for summary judgment and dismissed the suit. The district court held that the three interrelated contracts were void under the Texas Medical Practice Act, which prohibits any person from practicing medicine in Texas without a Texas license to do so.[1] It followed that no suit could lie for interference with a void contract.[2]
II.
We review the district court’s grant of summary judgment de novo.[3] Summary judgment is appropriate “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.”[4] The Court views all evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party’s favor.[5]
III.
Plaintiffs-Appellants Xenon and Dr. Chaudhry raise several interrelated issues on appeal, arguing that the district court erred in granting Baig’s motion for summary judgment. The district court wrote a comprehensive opinion addressing these arguments. We consider below the issues Plaintiffs raise on appeal.
Plaintiffs argue on appeal that the district court erred in finding that the three agreements were illegal and void under the Texas Medical Practice Act.[6]
The district court correctly concluded that Dr. Khan’s corporation, Xenon Texas, was organized to furnish anesthesia services in Texas, this corporation was a sham, and these services were being provided by Dr. Chaudhry. The Exclusive Management Services Agreement with Dr. Chaüdhry’s corporation, Xenon, makes it *273 clear that Dr. Chaudhry and Xenon had total control of Xenon Texas. This agreement provided that Xenon would have the exclusive right to furnish the following services for Xenon Texas:
(i) recruiting, credentialing and scheduling (including ensuring vacation coverage) of anesthesia providers (the “Anesthesia Providers”), (ii) ordering and maintaining supplies and equipment, (iii) management of billing and collection services, (iv) monitoring and overseeing regulatory compliance, (v) providing financial reports, (vi) implementing quality assurance programs, (vii) management of all funds of Xenon (including with respect to receipt of accounts receivables and payment of expenses incurred by Xenon), and (viii) providing logistics (including, if necessary, assisting in structuring employment relationships with Anesthesia Providers).[7]
Dr. Chaudhry explained in his deposition that Dr. Khan was the paper owner of Xenon Texas. In addition, Dr. Khan even granted signature authority to Dr. Chau-dhry. The agreement also provided that Xenon controlled all funds received for services provided by Xenon Texas. As the district court concluded, Dr. Chaudhry alone had authority to enter into agreements to provide anesthesia services and services related to that effort on behalf of Xenon Texas.
The one argument Plaintiffs urge on appeal that requires analysis is that the PSA and the Equity Agreement did not relate to the practice of medicine in Texas and that the district court erred in finding that it was void. As stated above, the PSA required Dr. Khan to transfer Xenon Texas to Xenon within seven days of the date Dr. Chaudhry received his Texas medical license.
We agree with the district court that the PSA and the Equity Agreement were an integral part of the overall scheme for Xenon to control Xenon Texas and were inextricably intertwined with the Exclusive Management Services Agreement. It is significant that the PSA required action by Dr. Khan during the time Xenon was actively operating Xenon Texas in the provision of anesthesia services. More specifically, Dr. Khan agreed to (1) “disclose ... each and every action he takes with respect to [Xenon Texas] and each and every decision he makes on behalf of [Xenon Texas]”; (2) give Dr. Chaudhry and his agents access to all of Xenon’s “personnel, properties, books, contracts, commitments, tax returns and records,” as well as any other information Dr. Chaudhry might request; and (3) refrain from paying any dividends or distributions, incurring any debt, or selling company assets.[8] These provisions in the PSA strengthened Dr. Chaudhry’s control over Xenon Texas’s medical practice before Dr. Chaudhry obtained his medical license and were designed to protect the value of his investment in Xenon Texas.
The PSA and the Equity Agreement were designed to avoid the possibility for Dr. Khan to dispose of Xenon Texas or deplete assets in Xenon Texas until Dr. Chaudhry obtained his medical license. In other words, through the PSA, Dr. Chau-dhry tried to preserve the asset he developed in Xenon Texas while he was directing the practice of medicine in Texas in violation of the Texas Medical Practice Act. The PSA and Equity Agreement were executed contemporaneously with the other contracts and played a central role in *274 allowing Dr. Chaudhry to indirectly practice medicine in Texas and reap the benefit of that illegal practice once he obtained his license.
IV.
In sum, the district court correctly analyzed these three interrelated contracts that were designed by Dr. Chaudhry to give him almost total control over the medical practice of Xenon Texas. This was done to permit Dr. Chaudhry to illegally practice medicine in Texas and reap the benefit of receiving the asset he. developed through this illegal activity. For these reasons and the reasons assigned by the district court in its careful opinion, the judgment of the district court is AFFIRMED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. Id. at *7.

. Johnston & Johnston v. Conseco Life Ins. Co., 732 F.3d 555, 561 (5th Cir. 2013).

. Fed. R. Civ. P. 56(a).

. Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).

.Dr. Chaudhry and Xenon also argue that a Texas state court judgment ordering Dr. Khan to transfer his ownership interest in Xenon Texas to Plaintiff binds this Court under principles of res judicata. The district court fully explained in footnote 31 of its opinion why the Texas state court’s decision is not binding in this suit for tortious interference with the contract. Xenon, 2015 WL 3823623, at *6 n.31.

. Id. at *4 (quoting the Exclusive Management Services Agreement).

. Purchase and Sale Agreement, July 2011, at 5-7.